# 22-0596

## United States Court of Appeals
## for the
## Second Circuit

REGINA ORSAIO,

*Plaintiff-Appellant*,

-against-

NEW YORK STATE DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION,

*Defendant-Appellee*,

ANTHONY ANNUCCI, Acting Commissioner of DOCCS, RONALD HESS, Bureau Chief, and SUSAN HROVAT, Senior Parole Officer.

*Defendants*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

## APPELLANT'S REPLY BRIEF

**Cooper Erving & Savage LLP**
*Attorneys for Plaintiff-Appellant*
39 North Pearl Street
Albany, New York 12207
(518) 449-3900

**TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................. i

TABLE OF AUTHORITIES .......................................................................... ii

ARGUMENT ................................................................................................... 1

I.     DEFENDANT'S BRIEF SIMPLY HIGHLIGHTS THE REASONS WHY THE DISTRICT COURT'S APPROACH WAS INCORRECT ......... 1

    A. Plaintiff's affidavit contains adequate proof that she did not receive the EEOC right to sue letter until her counsel received it, as the right to sue letter has no address for the plaintiff. ........................................... 1

    B. The opposition brief fails to address the arguments made by plaintiff. ......... 2

    C. The facts cited by defendant are hardly so compelling as to warrant summary judgment. ................................................................................ 5

    D. Defendant's waiver arguments are not only untrue but based on a faulty premise: all evidence was presented and all arguments were made below, but the defendants and the District Court wrongly confuse claims with evidence. ....................................................... 10

    E. The statement of P.O. Schwartz-Castillo "because you don't like cock," in reply to plaintiff's inquiry as to why defendant Hess did not like her, is admissible in evidence. .............................................................................. 13

CONCLUSION .............................................................................................. 15

CERTIFICATE OF COMPLIANCE WITH F.R.A.P. RULE 32 (a)(7)(B) .......... 16

# TABLE OF AUTHORITIES

**CASES**

*Davis-Garett v. Urban Outfitters, Inc.*, 921 F.3d 30, 45-48 (2d Cir. 2019) ........ 5, 10

*GTE Gov't Sys. Corp.*, 150 F.3d 21, 29 (1st Cir. 1998) .............................................7

*Lake v. Yellow Transportation Inc.*, 596 F.3d 871 876 (8th Cir. 2010) .....................7

*Malin v. Hospira, Inc.*, 762 F.3d 552. 564 (7th Cir. 2014) ........................................5

*Medeiros v. Pratt & Whitney Power Sys.*, 272 Fed. Appx. 78, 80 (2d Cir. 2008) ....7

*Reeves v. Sanderson Plumbing Products,* 530 U.S. 133, 148 (2000) .......................5

I. **DEFENDANT'S BRIEF SIMPLY HIGHLIGHTS THE REASONS WHY THE DISTRICT COURT'S APPROACH WAS INCORRECT.**

A. <u>**Plaintiff's affidavit contains adequate proof that she did not receive the EEOC right to sue letter until her counsel received it, as the right to sue letter has no address for the plaintiff.**</u>

In sum and substance, both the Court and defendants argue that plaintiff's affidavit was insufficient in and of itself to defeat the presumption that plaintiff received the notice of right to sue letter from EEOC shortly after the date on the notice. There were two notices of right to sue: one for the discrimination claim with a date of December 14, 2016 [A-122], and one for the retaliation claim dated May 2, 2017 [A-132]. The first has no address listed for the plaintiff, thus making it most likely that it was never mailed to plaintiff, notwithstanding the date of the notice. These documents do not contain cover letters. The notice is the letter itself. The second notice has an incorrect address for the plaintiff. Plaintiff's affidavit (which is not in the Appendix) states:

> 5. In fact, the Right-to-Sue Letter related to my complaint of retaliation that was sent to my attorney on June 1, 2017, had my address as being at 10 Foery Drive, Apt. 110, Utica, New York 13501. ***That is not my address.***
> 6. After the DHR found probable cause to support my allegations of retaliation, my attorney wrote to the DHR requesting that the case be dismissed for administrative convenience, which the Commissioner granted on March 30, 2017 [Dkt. No. 1-2, p. 3).
> 7. On April 13, 2017, my attorney wrote to the EEOC requesting that the EEOC issue a Right-to-Sue Letter so that I could pursue my claims in federal court. See Exhibit A

1

> 8. Exhibits A and C attached to the Complaint show the envelopes received by my attorney containing the Right-to-Sue letter for both complaints I had filed with the OHR [NYSDHR] and the EEOC. The envelopes have a stamp dated June 1, 2017. The first time I saw the Right-to-Sue letter for both complaints I filed with the EEOC was after my attorney received these envelopes mailed on June 1,2017.

[NDNY Dkt. No. 9-1(emphasis added)]

The defense relies on a notice of right to sue letter on the discrimination claim that was mailed to defendant Department of Correctional Services (DOCCS), as is clearly shown on the time stamp from its Office of Diversity Management embossed on the document [A-189]. This does not constitute proof that the notice of right to sue letter on the discrimination claim was ever mailed to the plaintiff. There is no evidence that it was mailed to plaintiff since the relevant right to sue letter has no address for the plaintiff. Thus, plaintiff's statement that she never received the notice of right to sue is corroborated.

**B. <u>The opposition brief fails to address the arguments made by plaintiff.</u>**

As this Court is undoubtedly aware, a very common defense argument is that each and every *fact* that plaintiff seeks to introduce as evidence of discrimination and retaliation must occur within the relevant statute of limitations. This not the law, as is explained in plaintiff's principal brief. While plaintiff may not assert a claim that is outside the statute of limitations, nor may plaintiff be awarded damages for any such events, evidence from outside the statute of limitations may be used in support of plaintiff's claims that are within the statute of limitations. This rule makes

2

sense. Otherwise, every time a wrongful act occurred, plaintiff would be required to file a claim with EEOC, even though a plaintiff might not suspect at the time that a particular individual occurrence was part of an overall pattern establishing discrimination.

At trial, counsel for plaintiff argued this point perfectly well:

> MR. DE OLIVEIRA: Your Honor, we keep talking about claims being dismissed, we are not talking about claims being dismissed, we are talking about evidence. Evidence doesn't expire, evidence doesn't have a statute of limitations, and we need to be able to show that, what the motivation was for Ronald Hess to issue an unsatisfactory evaluation to Ms. Orsaio after 11 years of perfect performance and the only way we can show this is to show the progression of his treatment of her during all those years with corroborating evidence from other witnesses who will be testifying about their knowledge of this treatment and how it was, it was retaliatory, and then leading to Ms. Orsaio to the point where she couldn't handle any more and filing a complaint of discrimination. So we keep talking about claims being dismissed or abandoned, we are not trying to revive a claim of discrimination, we are not asserting a claim of discrimination, but we need to be able to present to the jury that there was a motivation for the retaliation, and the motivation - - and the explanation for his performance evaluation is pretextual, why? Because this man has been mistreating, harassing, and discriminating against this woman for years, and that's the reason. We're not telling the jurors we're fighting a claim of discrimination.

At trial, counsel for plaintiff had no choice but to respect the Court's decision that the discrimination claim was out of the case. On appeal, however, plaintiff is challenging dismissal of the discrimination claim on the ground that the cumulation of the evidence showed discrimination and a hostile work environment and that

3

precluding evidence of discrimination at trial deprived plaintiff of a fair trial by preventing her from introducing relevant evidence on motive to retaliate.

The challenge to dismissal of the discrimination claim is based on several legal principles extensively briefed by plaintiff in its initial brief. It is highly significant that defendants make no effort to dispute that these legal principles exist and are binding on the lower court.

- It is impermissible to look at proffered evidence of discrimination piecemeal rather than viewing the evidence of discrimination in its totality.

- Direct statements of discriminatory animus are not required and are indeed unlikely. Yet the defense still stresses the absence of overtly anti-gay remarks.

- All the evidence should be considered in support of a hostile work environment claim so long as any one act contributing to the hostile work environment occurred within the limitations period.

- Plaintiff filed numerous internal complaints of a hostile work environment. Even defendants' own polygraph supervisor stated in a formal review that the harassment made it difficult for plaintiff to focus on her job, thus demonstrating that the defendants' conduct created a hostile work environment that altered the terms and conditions of her employment. Altering the terms and conditions of employment is an adverse employment action.

4

- The evidence plaintiff had put forward in support of her discrimination claim was independently admissible to prove motive to retaliate even if no discrimination claim had ever been brought and even if the Court allowed her to testify about her discrimination claim generally to show that she had a good faith basis for a claim of discrimination. A good faith belief in the validity of a discrimination claim is not what is at issue here; the issue is proof of motive to retaliate. There is no principle of law that allowing plaintiff to describe matters which would normally be inadmissible hearsay as a shorthand vehicle for proving good faith then deprives of her of the right to introduce all evidence relevant as to motive to retaliate.

C. **The facts cited by defendant are hardly so compelling as to warrant summary judgment.**

Defendants engage in the type of summary judgment practice the Seventh Circuit criticized in *Malin v. Hospira, Inc.*, 762 F.3d 552. 564 (7th Cir. 2014), and noted is all too common in employment discrimination cases. Defendants cherry pick certain facts that at first blush, if unrebutted, appear favorable to their position and urge the District Court to believe their version of the case. This is not what summary judgment is for. In *Reeves v. Sanderson Plumbing Products*, the Supreme Court stated that rebutting the facts advanced by defendants could defeat summary judgment unless "an employer would be entitled to judgment as a matter of law if the record ***conclusively*** revealed some other, nondiscriminatory reason for the

5

employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was ***abundant and uncontroverted*** independent evidence that no discrimination had occurred." 530 U.S. 133, 148 (2000) (emphasis added). Merely arguing that there was some plausible efficiency-related reason for mistreating the plaintiff does not warrant summary judgment.

In plaintiff's principal brief, she points out that the pattern of mistreatment in this case is strikingly similar to *Davis-Garett v. Urban Outfitters, Inc*., 921 F.3d 30, 45-48 (2d Cir. 2019), where this Court reversed the decision of the District Court, which had adopted a similar approach of analyzing every piece of evidence piecemeal and excluding it from evidence if it did not represent a separate claim of discrimination in and of itself. Defendants make no effort to explain how *Davis-Garett* is different from the case before the Court. Their silence is telling.

The Statement of Facts in plaintiff's principal brief provides ample evidence contradicting defendants' claims that Hess and Hrovat acted solely in the interest of promoting the efficiency of their department:

- Plaintiff was most favorably evaluated before Hess and Hrovat were her supervisors and her evaluations returned to positive after she was no longer under their supervision.

- Both made deprecatory comments about the plaintiff. The fact that this evidence came from plaintiff herself does not make it any less valuable. There

6

is no requirement that there be a corroborating witness, though as set forth below P.O. Schwartz-Castillo confirmed defendant Hess' bias directly.

- Hess and Hrovat acted contrary to DOCCS policy in numerous instances. While there might be arguments that for some reason they could depart from policy only insofar as plaintiff was concerned, the existence of policies testified to by many witnesses cannot simply be ignored and constitute alternative facts demonstrating that defendants did not act in the interest of efficiency. It is well-established that the failure to follow policy is evidence of pretext. *Medeiros v. Pratt & Whitney Power Sys.*, 272 Fed. Appx. 78, 80 (2d Cir. 2008) (Evidence of pretext where termination based on poor performance review by supervisor who, like Hrovat, had only held the position for a few months and did not familiarize himself with plaintiff's education and work experiences in contravention of policy); *Lake v. Yellow Transportation Inc.*, 596 F.3d 871 876 (8th Cir. 2010) (violation of unwritten polices resulted in denial of summary judgment); *GTE Gov't Sys. Corp.*, 150 F.3d 21, 29 (1st Cir. 1998) (deviation from established policy or practice).

- It is highly significant that DOCCS written policy, directive 2602, required that a person who has filed a discrimination complaint should be transferred to a position or location where she is not under the supervision of the discriminator. None of several persons in leadership positions followed this

7

policy, which was undisputed, even though plaintiff herself requested a transfer.

- Defendants rely on criticism of her by her polygraph instructor during her training period who nonetheless affirmed that she met all the criteria of professional performance to become certified as a polygrapher. Further the polygraph instructor was not a DOCCS manager or employee and was importuned to provide negative comments about plaintiff.

- Defendants repeat that plaintiff's grievances were denied in their internal process; however, the negative performance evaluation that is the heart of this case was rejected as retaliatory by defendants' counsel.

One particular factual argument of defendants reemphasizes the point that their arguments are not dispositive but merely create issues of fact. It is undisputed that parole officers assigned a SIST caseload were supposed to have a caseload ratio of 1.0, yet plaintiff's caseload was far higher (1.37). When the SIST caseload was removed from plaintiff, her successor in that caseload, P.O. Schwartz-Castillo, had a ratio of 0.96 [A-1718]. Defendants attempt to dispel the inevitable conclusion that plaintiff was being discriminated against by citing, for example, the case load of Parole Officer Jolma. However, plaintiff's evidence established the following: "P.O. Jolma did not supervise a caseload. She was a Parole Revocation Specialist (PRS), who did not have any sex offender or regular caseloads. For that reason, P.O.

8

Jolma's case ratio as PRS/delinquent was is 100:1 (Dkt. No. 30-65, pp. 1-2); (Orsaio Aff., ¶6). Thus, the fact that other staff members had a ratio higher than the desired 1.00 is not material to whether Defendant Hess disproportionally assigned cases to Plaintiff after he learned of her sexual orientation (Dkt. No. 30-12, pp. 47-49)." Other parole officers who worked in a correctional facility would also have higher caseloads, since he or she would not have to travel from supervisee to supervisee. Defendants compare apples to oranges. The relevant comparison involves SIST officers. Plaintiff testified: "I was right around average when I first did SIST. Then after he (Hess) learned I was gay I had six SISTs and then, all of sudden, I was having 15 regulars. So I was having 27 or 26 instead of the 20 figure (Dkt. No. 30-12, pp. 49)." [A-1365-1366]. The other defense arguments are along the same lines:

- Defendants argue that Hess originally permitted plaintiff to apply for the school district position. What they neglect to say is that she was actually hired for the position, and then DOCCS intervened after she was hired to make sure she did not actually work there. [A-1369] By acknowledging that Hess permitted plaintiff to apply, defendants admit that he was one of only two DOCCS employees knowledgeable of her application, and he was the only one in a supervisory role. [A-1368] It is reasonable to infer (though not conclusive) that Hess was the person who defeated her opportunity to work for the school district. The only two DOCCS'

9

employees who knew about Plaintiff's application for the Utica School District job were Senior Parole Officer Pezdek and Defendant Hess [A-1423, ¶ 183].

- Defendants argue that the disproportionate assignment to plaintiff of LCR reports is immaterial because the relevant parolees were released from parole anyway. However, Hess did not know that when he assigned these tasks to plaintiff. [A-1362-1363] His intention was to overburden her, as was the case in *Davis-Garret*.

- Defendants accuse plaintiff of not carrying her weight as a polygrapher. They neglect to mention that she was dependent on referrals from others and, when she was not receiving enough cases to increase her polygraph caseload, she diligently went looking for cases. [A-1318] [See also A-873-877]

- In discussing the issue relating to plaintiff's use of a State vehicle to travel to locations where she was scheduled to perform polygraphy exams, defendants fail to point out that a State vehicle was originally assigned to her as indicated in the relevant documentation [A-1528], but that assignment was subsequently revoked [A-1442, ¶69].

**D. Defendant's waiver arguments are not only untrue but based on a faulty premise: all evidence was presented and all arguments were made below, but the defendants and the District Court wrongly confuse claims with evidence.**

Defendants argue that plaintiff waived many of the facts stated by not raising these in the court below. On the contrary, all of the facts set forth in plaintiff's

10

principal brief and reply brief were part of the record below, as the citations to the Appendix in support of these facts demonstrate. The chart comparing plaintiff's evidence with the Court's account of the proof that plaintiff utilized in its principal brief merely repeats and re-references facts that were already included in the Statement of Facts with appropriate citations to the Appendix or the record. Defendants misrepresent the chart as the only reference in plaintiffs' brief to these facts.

Defendants' waiver argument is based on the District Court's mode of analysis wherein the District Court looked at each item of evidence piecemeal, determined whether or not it was tied to some particular expression of discriminatory intent, and further whether it was an adverse employment action. If plaintiff did not argue that there was a tie-in to some explicit manifestation of discriminatory animus, or plaintiffs did not argue that each event was an adverse employment action, then defendants (and the District Court) consider those facts "waived" as evidence of discrimination. As explained in plaintiff's principal brief, plaintiff put forth a pattern of repeating maltreatment of plaintiff by Hess and Hrovat, which, in context, was sufficient to create an issue of fact for trial as to whether plaintiff was discriminated against because of her sexual orientation. Further, each event need not be an adverse employment action in and of itself to be considered evidence of discrimination. Only one adverse employment action is needed, and it suffices that plaintiff was denied

11

promotional opportunities, received the first and only unsatisfactory evaluation of her career, and worked in an environment that was hostile enough to alter the terms and conditions of her employment.

Defendants' final waiver argument is the following: "Finally, Orsaio describes in the background section of her [principal] brief [on appeal] the court's ruling precluding her from introducing evidence identified for the first time just two weeks before trial was scheduled. By failing to present argument on the issue, she has abandoned any challenge to the court's ruling." [Defendants brief p. 78]. It appears that defendants' claim of waiver is premised on plaintiff's failure to include a subheading in her argument concerning the Court's evidentiary rulings specifically addressing for a second time the propriety of excluding evidence of promotional opportunities that arose after trial was cancelled due to Covid but before trial actually happened. Plaintiff's principal brief provides this Court with all the relevant discussion of this issue:

> The Court also denied Plaintiff the opportunity to introduce into evidence any promotions Plaintiff was denied in 2021 on the ground that discovery on those issues had closed (despite allowing evidence of six lost promotions that had occurred after discovery closed but before 2021). The 2021 lost promotions occurred after the case was first called to trial but then adjourned due to COVID. Following the adjournment of trial, as soon as the promotions were denied, Plaintiff's counsel disclosed them, ***exactly as the rule on supplementation of discovery requires***. These promotions were significant because the promotions were denied by persons who were involved in the negative 2016 performance appraisal. The Court reasoned that defense counsel had been unable to talk to the persons involved, ***even though these were***

12

*managerial employees of DOCCS who could have been disciplined for refusal to answer questions from defense counsel*. Whether or not defense contacted these witnesses had nothing to do with Plaintiff or her counsel. [A-2111-2119, 2126, 2141-2143] [emphasis added]

While there is no subheading on this point in plaintiff's brief, plaintiff is not arguing that an error of this type is sufficient to warrant reversal of the trial verdict. This evidence was relevant on damages only. Defendants' argument is hyper-technical. All the relevant information is present to permit defendants to respond. They just choose not to on the ground of "waiver." Plaintiffs pointed out that the promotional opportunities arose after the original trial was adjourned due to covid, so plaintiff's counsel did not learn of them until after the adjournment; that plaintiff's counsel provided supplemental disclosure upon learning of the information, as he was obligated by law to do; and that there was no prejudice to defendants since they could have investigated this information which was entirely under their own control since the promotional opportunities were within their own agency. Why the Court excluded this evidence remains mysterious. Should this Court reverse and order a new trial, there is no rational reason why this evidence should not be put before a jury.

**E.    The statement of P.O. Schwartz-Castillo "because you don't like cock," in reply to plaintiff's inquiry as to why defendant Hess did not like her, is admissible in evidence.**

P.O. Schwartz-Castillo participated in harassing plaintiff so that she requested a transfer of duty day to avoid him, a transfer which Hess denied, contrary to policy,

13

thus condoning the harassment [A-1439, 1443]; Schwartz-Castillo personally benefited from Hess' maltreatment of plaintiff, as he became responsible for the SIST caseload when she was removed from it [A-1718; Plf. Ex. 29, p. 608]; and he responded to Ms. Orsaio's question as to why Hess permitted a defaced photo of her to remain on the bulletin board by saying that Hess did not like her "because you don't like cock." [A-184, 1445]

    The statement at issue showed the level of hostility that existed toward plaintiff in the office. Hess was in charge of the office. The statement shows that he either created the hostile environment or condoned it. Either way, plaintiff should be allowed to use the statement as evidence of the hostile environment. Further the statement was made in response to an event that Hess participated in. Plaintiff saw the offensive photograph on the bulletin board which Hess walked by every day [A-1445]. She was seeking an explanation as to why he did nothing about it, notwithstanding that sexual harassment training routinely advises supervisors like Hess [A-163] (and all employees) that defaced photographs related to gender are impermissible in the workplace. Finally, that defaced photograph had a dramatic impact on the plaintiff and would be admissible on that ground as well. Since the most dramatic evidence of the hostile environment in the workplace was excluded, the jury was deprived of a realistic understanding of the conditions under which plaintiff labored.

## CONCLUSION

For the foregoing reasons, the decision of the District Court should be reversed, and the matter remanded to the District Court for trial on plaintiff's discrimination and hostile work environment claims and for a new trial on her retaliation claim.

Dated:    October 11, 2022    **COOPER ERVING & SAVAGE LLP**
             Albany, New York

/s/ Phillip G. Steck
Phillip G. Steck, Esq.
N.D.N.Y. Bar Roll No.: 102664
39 North Pearl Street
Albany, NY 12207
518-449-3900
psteck@coopererving.com

## CERTIFICATE OF COMPLIANCE WITH F.R.A.P. RULE 32(a)(7)(B)

Appellant's brief inclusive of point headings, footnotes, and quotations and exclusive of pages containing the cover, table of contents, table of authorities, certificate of conformity and addendum is 3,809.

/s/ Phillip G. Steck
Phillip G. Steck, Esq.